IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

UNITED STATES OF AMERICA  *

v.   *   CRIMINAL NO.: WDQ-09-0446

MARCUS HILL   *

\* \* \* \* \* \* \* \* \* \* \* \*

MEMORANDUM OPINION

Marcus Hill is charged as a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). For the following reasons, Hill's motions (1) to suppress a handgun seized from his car; (2) to suppress his statements while being taken into custody; (3) to dismiss the indictment for violation of his right to bear arms; and (4) in limine to preclude or limit testimony regarding the rate of fingerprint recovery from weapons, were denied.[1]

I.  Background

On January 9, 2009, Hill drove a silver 2000 Buick Park Avenue onto the parking lot of the 7-Eleven at 4401 Belair Road in Baltimore City. Nekia Bennett left Hill's car and entered

---

[1] As the Government did not call the latent fingerprint examiner, *see* Paper No. 96, this motion was denied as moot. The Court also granted Hill's motion for leave to amend, supplement, withdraw, or file additional motions.

the 7-Eleven.[2]  Inside the store, two uniformed Baltimore City Police Officers--Sgts. Conaway and Alvarez--were standing near the front counter.

After shopping, Bennett approached the counter to pay and asked the clerk for a pen.  She wrote "help" on a scrap of paper and passed it to the officers before leaving the store.

Conaway and Alvarez left the store and saw Bennett getting into the car with Hill.  Approaching the car, the officers told Bennett and Hill to "show their hands."  Bennett complied and exited the car, but Hill did not.  Conaway shot Hill in the abdomen.  Hill said "I don't have anything," "F--- y'all. F--- the police," and "I've been shot."

After Hill's arrest, Bennett gave a recorded statement that she and Hill had been arguing in the car before their stop. Hill had yelled at her, pushed her in the shoulder, banged on the steering wheel, and become increasingly angry.  As Bennett was leaving the car after Hill had pulled into the 7-Eleven parking lot, Hill grabbed her wrist, pulled her back into the car, and placed her hand on his pocket.  Bennett felt a hard object she believed was a gun; Hill told her: "Don't play with me.  I don't like the police."

---

[2]  Bennett worked as an inmate transport security officer and was wearing her work-issued handgun in a holster at her hip when she entered the store.

After obtaining this statement, Baltimore Homicide Detective Juan Diaz obtained a search and seizure warrant for Hill's car. The warrant application sought authority to search for evidence of a murder. A loaded .22 caliber Taurus semi-automatic pistol in a black stocking was recovered from under the front passenger seat. This firearm was later determined to be inoperable.

II. Motion to Suppress Tangible and Derivative Evidence

Hill moved to suppress the gun, arguing that the search and seizure warrant was invalid on its face and not supported by sufficient evidence of probable cause. Paper No. 16 ¶ 3. The Government contends that the reference to "murder" on the warrant was a harmless mistake and that Diaz's affidavit for the warrant application provided ample probable cause. Paper No. 33 at 3-7.

A warrant must be supported by evidence of probable cause. U.S. Const. amend. IV. There is probable cause when, under the totality of the circumstances, there is "a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). A reviewing court shows "great deference" to the original determination of probable cause. *United States v. Blackwood*, 913 F.2d 139, 142 (1990)(*quoting Spinelli v. United States*, 393 U.S. 410 (1969)). "[A] reviewing court is not to conduct a *de*

*novo* determination of probable cause, but only to determine whether there is substantial evidence in the record supporting the [original] decision to issue the warrant." *Massachusetts v. Upton*, 466 U.S. 727, 728 (1984).

Diaz's affidavit recited that: (1) a woman had requested help from two officers in a 7-Eleven store; (2) she had left the 7-Eleven and got into a 2000 silver Buick parked in front of the store; (3) Hill, the registered owner, was in the driver's seat of that car; (4) Hill had threatened to assault the woman with what she thought was a gun; (5) Hill refused to comply with the officers' request that he show his hands and leave the vehicle; and (6) Hill was shot inside the car. Paper No. 33, Ex. 1 at 4. Also attached to the warrant application was a summary of Diaz's eight-year experience as a Baltimore Police detective. *Id*. at 3. There was probable cause to search Hill's vehicle for evidence of an armed assault on Bennett.

Hill contends that the references to "first degree murder" make the warrant invalid on its face because there was nothing presented to the issuing judge about a murder. Paper No. 16 ¶ 3. Neither the Fourth Amendment nor Maryland law requires the warrant to identify the alleged crime. *See* U.S. Const. amend. IV; Md. Code Ann., Crim. Proc. § 1-203. The courts also "allow some latitude for honest mistakes" made in connection with warrants. *United States v. Owens*, 848 F.2d 462, 464 (4th Cir.

4

1988). Because there was probable cause, the warrant's reference to "first degree murder" was harmless error. Accordingly, Hill's motion to suppress the gun was denied.

III. Motion to Suppress Statements

At the motions hearing, Hill conceded that his statements were voluntary[3] but argued that the statement, "F--- y'all. F--- the police," should be excluded as irrelevant to the charge.

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. The Government argued that Hill's statements show his negative attitude toward the police, which is relevant to his refusal to follow police instructions and to the anticipated defense that the police "planted" the weapon in his car. Because Hill's statements were probative of his attitude toward the police, the Court denied the motion to suppress.

IV. Motion to Dismiss the Indictment

Hill's motion to dismiss the indictment challenges the constitutionality of 18 U.S.C. § 922(g)(1) under the Second

---

[3] Hill originally moved to suppress these statements on the grounds that they were involuntary and obtained in violation of his Fourth and Fifth Amendment rights. Paper No. 17 at 2.

5

Amendment, Commerce Clause,[4] and Due Process Clause of the Fifth Amendment. Paper No. 64 at 2.

Hill argues that Section 922(g)(1) is unconstitutional because it criminalizes the possession of firearms by convicted felons without sufficient justification. Paper No. 64 at 4-11. He also argues that criminalizing the possession of *inoperable* handguns requires particular justification. *Id*. at 12-14.[5]

Following *District of Columbia v. Heller*, "challenges to firearms regulations under the Second Amendment must be individually analyzed because such regulations restrict exercise of a constitutional entitlement." *United States v. Chester*, 2010 U.S. App. LEXIS 3739 (4th Cir. Feb. 23, 2010). The Fourth Circuit has considered and upheld the prohibition on possession of firearms by convicted felons in *United States v. Brunson*, 292 Fed. Appx. 259 (4th Cir. 2008). *Brunson* cited *Heller*'s affirmation of the "longstanding prohibitions on the possession of firearms by felons[.]" *Id.* at 261 (*quoting Heller*, 128 S. Ct. at 2816-17); *see also Chester*, 2010 U.S. App. LEXIS 3739, at

---

[4] The Fourth Circuit has considered and rejected the argument that Congress exceeded its authority under the Commerce Clause when it enacted § 922(g). *See United States v. Wells*, 98 F.3d 808, 810-11 (4th Cir. 1996).

[5] Hill relies on the Supreme Court's recent decision in *District of Columbia v. Heller*, which held "that the Second Amendment confer[s] an individual right to keep and bear arms." 128 S. Ct. 2783, 2799 (2008). "[T]he right secured by the Second Amendment is not unlimited." *Id*. at 2816.

6

*11 n.6).[6] Section 922(g)(1) is a valid restriction on the right conferred by the Second Amendment.

Under § 922(g)(1), a person who has been convicted of a felony may not possess "any firearm or ammunition" transported in interstate or foreign commerce. 18 U.S.C. § 922(g)(1). Under § 921(a)(3), a "firearm" is "any weapon . . . which will or is designed to or may readily be converted to expel a projectile by the action of an explosive." 18 U.S.C. § 921(g)(1)(A).[7] The weapon does not have to be operable. *United States v. McSwain*, 207 Fed. Appx. 355, 356 (4th Cir. 2006); *United States v. Willis*, 992 F.2d 489, 491 n.2 (4th Cir. 1993); *see also United States v. Brown*, 117 F.3d 353, 354-56 (7th Cir. 1997). Because the weapon discovered in Hill's car was "designed to" be a gun capable of firing bullets, it is a firearm under § 922(g)(1). Accordingly, Hill's motion to dismiss the indictment was denied.

---

[6] Hill has argued that *Heller*'s language is dicta and not binding on this Court.

[7] A "firearm" also includes "(B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device" but excludes "an antique firearm." 18 U.S.C. § 921(a)(3).

V.  Conclusion

   For the reasons stated above, Hill's motions were denied.



May 20, 2010                         _____/s/_____
Date                                 William D. Quarles, Jr.
                                     United States District Judge